Thank you, Anas. Thank you for your consideration. Thank you. The next case on our docket this morning is Evans v. S. Cal. Intergovernmental Training & Dev. Ctr. Good morning, Your Honors. Daniel Wolfter here for Plaintiff Appellant Tamara Evans. I'd like to reserve five minutes for rebuttal, please. I'm happy to answer any of the panel's questions regarding falsity, materiality, and retroactivity, but I intend to focus my argument on the SciENter issue. I'll start with why the District Court was wrong, even on its framing of the issue. Then I'll address other record evidence establishing RTC's intent. As to SciENter, the sole reason the District Court gave for taking the issue from the jury is that it believed the only thing that mattered was whether RTC intended to deceive Post. But focusing the intent element on what RTC thought that Post understood is wrong as a legal matter, and even if this Court agreed that this is the correct lens, the District Court was wrong on the facts. RTC admits that Post believed the budgets approximated the actual costs to provide the trainings. RTC, on the other hand, admits that it used budget-based invoices to receive far more than that. In other words, the undisputed evidence shows that Post believed the budgeted RTC's actual costs, and RTC purposefully used budget-based billing to seek much more than its actual costs. Even under the District Court's wrong legal framework, those admissions should have resulted in temporary judgment for our side, but at the very least, they are sufficient for a jury to find SciENter. Second, a jury can rely on highly suspicious, undisputed evidence establishing three things. One, RTC was indisputably aware that it was receiving federal VAWA funds to provide the training. Two, the annual contracts never varied in specifying that RTC had to submit actual cost invoices. And three, only a few individuals were aware that Post orally agreed to modify the express terms of its agreement year after year. RTC has never explained why only a few individuals at Post and RTC would orally agree to modify an express contract term 13 times rather than modifying the written term of the contract itself, when that written contract requirement also happens to be express federal condition of payment. Well, counsel, I mean, I agree with you. It seems kind of odd how this all happened, but it is how it happened, and so I'm struggling. What I don't see in the record is clear indication that RTC knew what the federal requirements were in terms of the type of billing. It had that information in terms of its contract with Post, but we have this weird contracting course of dealing, I suppose. So what is, I mean, do you have anything that you can point me to to say that RTC knew that this was a federal requirement? So I'll start by saying that remember that under the FCA, for RTC to know it was a federal requirement, it either had to know actually or it had to be reckless or deliberately ignorant of the fact. And I think the best evidence that we provide of that is Ms. Asagai's testimony, and her deposition was prominently featured in the summary judgment briefing of both parties in which she testifies that she was paid by RTC to help Post get the VAWA subgrants and that she knew of the VAWA's actual cost condition of prepayment, payment, excuse me. Again, Ms. Asagai was on RTC's payroll, yet she was stationed at Post to help obtain and then administer the VAWA subgrants. Ms. Asagai was on RTC's payroll, and she knew that the VAWA training requires actual cost billing. Why should we, I mean, I think that probably is one of your best arguments, but my understanding is that you made that for the first time in reply, so why should we take it up? So we made it for the first time in reply because it was irrelevant to overturning the district court's legal framework. Because the district court thought that the only thing that mattered was what RTC believed as to Post, it was irrelevant what Ms. Asagai understood as to the VAWA subgrants. But when RTC then submitted its opposition, it argues on pages 35, 37, and 38 of its brief that this court can affirm on the alternative basis that, according to RTC, plaintiff also failed to identify any record evidence establishing that RTC knew or should have known of the VAWA's billing requirements. That is different than what the district court ruled on in terms of why we didn't establish CENTER. And if you look at what the district court said as to SCIENTER, it holds only this. RTC's claims against, I'm sorry, relator's claims against RTC here also fail on SCIENTER grounds. As detailed above, there is no evidence that RTC submitted budget-based VAWA invoices to Post, knowing or recklessly believing that Post believed they were for actual expenditures. The district court said nothing about whether or not there was record evidence as to whether RTC should have known of the VAWA's actual cost requirement because it was simply irrelevant to the district court as it framed the issue on SCIENTER. So if we take up the argument with regard to Ms. Asagai, I don't know if I'm saying that right. Do you think that that gets you to actual knowledge? I do think it gets us to actual knowledge, but I think it very, very easily gets us to RTC's own payroll who's stationed at Post, helping to get these VAWA grants who's aware of the actual cost requirement. There's also other record evidence of many employees going from Post to RTC, and I would call it a revolving door, but it's a one direction sort of, the record shows that it's just one direction. People would leave Post to then go join RTC. My friend on the other side tries to put this stark wall between Post and RTC that simply doesn't exist. It's hard to explain why someone who was stationed at Post, and by all accounts, everyone believed was a Post employee, would be on RTC's payroll. But that's what we have, and RTC, and my friend on the other side has never disputed that in any of the briefing or in any of the- But you think that just because her check, I mean, she was an independent contractor, right, so she got a 1099, and she got that from RTC, that that fact alone gives imputed knowledge? I think it is, at the very least, very good evidence from which a jury could find scienter. Now, if you're asking whether or not I think that you can, from your vantage, grant summary judgment to our side, this is de novo review that is in your prerogative, but I think a faithful application of the standard of review asks, if the jury returned a verdict for Ms. Evans based on this evidence, could this court uphold that verdict on appeal? Because the answer to that question is yes, the district court must be reversed. I think that this evidence is surely sufficient for a jury to rule in our favor on scienter. Was Ms. Asagai handling specifically RTC's contracts with Post, or was she doing other things? It wasn't about- So the undisputed evidence shows that what Ms. Asagai's duty was was to help Post on RTC's payroll write the VAWA applications to get the VAWA subgrants from SEMA. The other side also acknowledges that she was heavily involved in the SEMA audit itself. And this is actually quoting from the undisputed material facts that were submitted by the defendants in this case. And at 85.2, page 11, in her deposition, the RTC's supporting documents for its VAWA invoices for SEMA's review and audit. So my friend on the other side also heavily relies on Ms. Asagai's testimony for its own arguments as to both the SEMA audit and what that meant for this case. It relies on her testimony mainly for its argument that there was a public disclosure issue in this case. But there is no doubting that Ms. Asagai's didn't address it because it wasn't relevant under the district court's legal view of the case. I also want to point out that the Supreme Court's decision in Heckler is on point. There, in the Medicare context, the Supreme Court held that, quote, those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to law. The intermediary there, like Post here, was the payment. And the Supreme Court expressly rejected the idea that a defendant's unlawful billing practice could be sanctioned by the oral rather than written advice of an intermediary agent. And the reasoning the Supreme Court gives for that is at 467 U.S. at 65. And what the Supreme Court says is the appropriateness of a respondent's reliance is further undermined because the advice it received from travelers, the government agent in that case, was oral. It was not merely the that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument. Written advice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given to the citizen and subjects that advice to the possibility of review, criticism, and re-examination. The necessity for ensuring that government agents stay within the lawful scope of their authority and that those who seek funds act with scrupulous exactitude, argue strongly for the conclusion that an estoppel cannot be erected on the basis of oral advice. I'd like to reserve the remainder of my time unless there are questions. May it please the Court, Stephen Beamer for the appellee, RTC, as referred to in the briefs. I'm going to address the three elements the district court addressed in granting the summary judgment for RTC. First, false claims, second, scienter, and then third, materiality. I'd like to focus on the 2009 amendment to 3720. Can you focus on the scienter claim first? I guess that's what counsel spent most of this time and I have some questions about that. Of course, your honor, thank you. First of all, I'd like to instruct and make sure that we're clear on one issue. The factual dispute related to Ms. DeCarla Agassay, that was only raised in the reply. All of the material facts raised by the appellee were undisputed for purposes of the summary judgment. I think that's important procedurally in dealing with all the elements, particularly scienter. My understanding is that also wasn't really argued to the district court, that is correct. It was raised first in the reply, so it wasn't addressed. We didn't have an opportunity as the respondent or the appellee to address the issue and the district court did not have the opportunity to address that issue. So focusing on the scienter, the key in my mind, and I ask the court to consider, is what did RTC know from the perspective of post on whether or not any of the claims made for payment were false? This historically dates back to 1997 through December 31, 2009. There was a procedure established, mandated by post, agreed to by RTC, that they would submit budget billing as opposed to actual billing for payment purposes related to select classes. The two variables were the classes varied in cost, the training classes varied in the focus. If you ground this in the facts and you look at the contract, the contract attachment one exhibit B has a budget breakout and there is a precise number of $4,026 per class and then if you look at the invoice or invoices that were submitted, they mirror the budget billing. Those invoices were submitted post paid on a budget basis. We had the head of post, Ed Men-Pesanovsky, he agreed to the budget billing. We had Jan Bullard for post agreeing to the budget billing and RTC believed it was following the procedure mandated by post and allowed pursuant to the process for those 12 years and therefore no one at RTC thought that they were making a false claim either on the face of the invoice or contrary to the contract or no one at RTC knew of any type of false statement of certification being made to post because post in agreement indicated that the budget billing was a proper process to be paid, Your Honor. Why isn't RTC on some level of notice? Because they did know that some of the money or maybe all of the money for these trainings was coming through the federal government. So why weren't they charged with doing a little investigation? Your Honor, because their contract did not call out for compliance with either the federal grant or the sub-grant. The contract only indicated that there should be actual billing within the I agree that had the contract incorporated either the federal grant or the state grant as a mandate, then RTC would have been on notice and would have complied with the requirements to have someone rely, meaning RTC, on the process mandated and agreed to by post, operate historically for a period of 12 years and then 12 years later to come back and say that what we've been doing for 12 years is improper, I think RTC detrimentally relied on the process. Well, a little bit about what they're arguing is that you might have had sort of your head in the sand, right? You might have just like looked away and not complied with what you should have been doing. I think, again, I would ground it in the contract. Had RTC been made aware of those elements, obviously there would have to be compliance. When you contract with a party and you have, in essence, a fully executed oral modification of the contract, you can rely on that fully executed oral modification that historically carried out for 12 years, Your Honor. So I would agree with the court. Had RTC received a copy of the VAWA grant or the sub-grant from the state or incorporated that by reference within the contract, then RTC would have been put on notice. I think to hold them to a standard where they didn't have an opportunity to review and vet either the grant or the sub-grant, I think would be inappropriate. So I'd like to move to false claim. I've already addressed the contract, the invoices. On the face of the invoices, Your Honors, there clearly is not any type of false claim being made on the face of the invoice, nor were there any statements made by RTC or certifications made by RTC to Post, who was the payor, that would lead Post to believe that somehow, some way, that they were receiving actual cost invoicing. Everybody was well aware, again, of the budget billing. But can you address, I mean, the United States filed an amicus brief in this case. I think basically it's saying that your argument on that point is confusing falsity and scienter. I mean, the fact is that the VAWA grant here did require a specific kind of billing to be done. That kind of billing was not done. And so that was wrong. So whether or not RTC knew that and should have adjusted its behavior or not, it was wrong in terms of what the federal requirement was. So why isn't falsity met? Your Honor, I think in addressing that, I would rely on Escobar. A simple breach of contract does not give rise to false claim. Neither is a violation of a statute. You need to focus on whether or not RTC submitted a claim for payment with the idea of it being false on its face, or did they make an affirmative statement or certification of Post, who, through the deliberative process, made the decision to pay or not pay. And I think that the amicus brief is wrong on that issue. I think the focus has to be on RTC and what RTC knew from a scienter standpoint. But you're just saying what RTC knew. That's scienter. That's separate from falsity. Falsity is its own requirement. So I come back to the federal requirement was put in actual cost billings. That was not done. So whether RTC knew that or should have known that is a separate question. But the fact is that the wrong kind of bills were submitted. And I don't disagree, but RTC was not on notice. And they clearly, when they submitted their invoicing, that was not a false claim for payment because it doesn't satisfy the statutory requirements of 3729A1, A1A or B. And ESCOBAR supports our position that breach of the contract does not give rise to false claim. The last issue that was raised in the brief I'd like to address is materiality. Given the change or amendments to 3729 prior to the amendment under the 1986 version of 3729, the claim had to be made to the government and or a branch of the armed services. That changed, obviously, in 2009 under FERA. If a claim was submitted, a false claim was submitted to a contractor, a grantee or other recipient where federal funds were used, then you could, in fact, have a false claim arising out of the Totten case and the Allison Injun case. In this circumstance, we are of the opinion, and we ask the court to adopt, that the focus needs to be on the payor. There is no statutory scheme where the government, meaning the U.S. government and or a branch of the military, weighs in on the payment process, either legally or pragmatically. Post was the decision maker. Post was the subgrantee. Post made the decision of whether to pay or not pay based on billing. So from a materiality standpoint, Post is that decision maker. Focusing on Escobar, indicating that a long history of payment supports the issue of lack of materiality, which we have here, 1997 through December 31, 2009, Post paid based on budget billing, clearly Post did not deem actual billing to be a material term and condition for payment. To indicate that somehow the U.S. government and or a branch of the armed forces would need to weigh in, there is no mechanism, and we're sitting here speculating how the U.S. government would decide one way or the other on actual versus budget billing. That just doesn't make sense either legally, it's not grounded in statute, not grounded in Escobar, or factually from a pragmatic standpoint. We are of the opinion on behalf of RTC that a false claim was not established, Scienter was not established, and materiality wasn't established in this case. We are of the opinion the district court was right in its decision for obvious reasons. We legally believe in that those elements were not met, and then secondly, the district court's analysis was done very thoroughly and with great detail. I do think I'd like to close with there were no disputed facts to this summary judgment, so then to rely on something raised in the reply to refute the undisputed facts raised by the moving party, us in the summary judgment, I think would be improper. If there's any questions, I'd be happy to address those questions. Would you just briefly address the retroactivity point? I'd be happy to, Your Honor. Under CAFASO, obviously we have retroactivity back to two time periods, May 20th, 2009 and June 7th, 2008. The June 7th, 2008 deals with pending claims, the May 20th, 2009 has to do with claims that are being presented for payment. So do you think CAFASO binds us? I do. I think it comes out of, obviously, the Ninth Circuit. I think CAFASO is the law at this point in time. Isn't it fair to say that the one statement, I think it's one sentence and a footnote in CAFASO is dicta? Your Honor, CAFASO has been cited in other decisions and relied upon in other decisions. I don't think it's dicta. I think it's precedent that's been utilized in the Ninth Circuit. But I will say the retroactivity in my mind isn't the key to this analysis because of the timing elements under the 2009 amendment. We have a brief time period where RTC submitted budget billing versus actual billing during that window between June 7th, 2008 and May 20th, 2009. So that's the reason I didn't focus on CAFASO. Thank you, Your Honors. Thank you, Your Honors. I'll start with waiver. There are two issues on waiver, and I want to address both. First is why we raised it first in the reply. It is black-lettered law that a reply replies to a response, and we didn't anticipate that the other side would be raising an alternative basis for affirmance. It was entirely proper for us to reply. And it is also incorrect to say that this issue wasn't front and center for the District Court. On page 3 of our affirmative motion for summary judgment, we argue, a parade of SDRTC witnesses and post-witnesses repeatedly testified that SDRTC obtained federal VAWA funds from post by knowingly submitted false invoices to post. Depositions in this case were from the following SDRTC employee who worked at post. We then say, for the Court's ease of reference and to conserve the Court's resources, the portions of each witness's testimony pertaining to SDRTC's budget-based billing are highlighted. Only the highlighted testimony is proffered for the Court in this motion. However, in the interest of completeness, the entire transcript is provided. Those highlighted portions of Ms. Asagai's testimony are what we front in the reply. But I don't see, though, in the district, because we went back and looked at the District Court pleadings, I don't see the argument being made, the imputed knowledge argument that you're trying to make now. Well, but that is the imputed knowledge argument. We are saying, we are arguing that they knowingly submitted false invoices. Remember, knowingly includes imputed knowledge under the FTC, I'm sorry, the FTC, the FCA. And I'll point out that in RTC's opposition to the motion, the only things they dispute as to the highlighted portions of Ms. Asagai's testimony are this. And this is at 89-2, page 8. Dakarla Asagai, previously Leach, began working at POST in January 2006 or 2007, stopped working at POST in April 2012. We don't dispute that. Dakarla Asagai had no responsibility for reviewing and approving any of RTC's VAWA invoices. She admitted she did not review or approve of any of RTC's VAWA invoices and that only responsibility regarding those invoices was that she, quote, just monitored what was approved by POST. She further testified that, then I would go ahead and track these dollar amounts in the appropriate category. And the only other thing that they raise in opposition is that she is not competent to give testimony concerning what occurred in 2014 and 2015. In their own affirmative motion for summary judgment at page 5, my friend on the other side argues that Ms. Asagai described SEMA's review as an audit and that in her deposition the relator described what she and Ms. Asagai did to obtain RTC's supporting documentation for VAWA invoices for SEMA's review and audit. They also cite her deposition at page 35 of their brief. And I also want to note about the SEMA audit itself that Ms. Asagai also testified that when reviewing the bills RTC submitted, they looked to her as though they were for actual costs and could be backed up by receipts. She testified that during the SEMA audit she fully expected that RTC would be able to substantiate those bills. And indeed the record shows that SEMA itself could not tell by looking at the bills that they were for budget, that they were budget-based either, which is the very reason it asked for supporting documentation. If it were clear from the face of the bills that they were higher budgeted rather than actual costs, then SEMA would not have asked to see them. And on that I'll note that also undisputed, and this is in at 85.2 page 14 of the record in defendant's submission of undisputed facts, quote, the auditors informed plaintiff relator that reimbursement for RTC's claimed expenses would be disallowed if post could not produce the justifying documentation. Further, the auditor stated that disallowing expenses would, that the disallowed expenses would be reported as adverse finding in their compliance audit for the monitoring visit. So this idea that the face of the bills were not false, it is actually, contradicts their own undisputed evidence that they cite to the district court. On the issue of materiality, I'll note that the text itself is what asks for speculation. It defines materiality as having a natural tendency to influence or be capable of influencing the payment or receipt of money or property. I'll note that when FARA added that definition of materiality, it did not limit it by saying it could only apply to an intermediary or whoever makes the decision. And I think the reason for that is when they added this definition of claims, if I may finish my answer, they said claims can be made, quote, made to a contractor, grantee, or other recipient if the money or spending is to be spent or used on the government's behalf or to advance a government program or interest. And I return to Heckler for why that's important. An intermediary doesn't... Your time has run, so why don't you wrap up. Thank you, Your Honors. Thank you. All right, the matter of Evans versus Southern California Intergovernmental Training and Development Center is submitted.
judges: THOMAS, FORREST, MENDOZA